UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:08CR268CAS(MLM) |
| ) | |
| FREDNANDUS McINTOSH, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**
**AS TO FREDNANDUS McINTOSH**

**I.  MOTIONS TO SUPPRESS EVIDENCE.**

This matter is before the court on the Motion to Suppress Evidence and Supplemental Motions to Suppress Evidence and Statements filed by Frednandus McIntosh. [Docs. 14, 17 and 24] The government filed written responses. [Docs. 16 and 25] An evidentiary hearing regarding the execution of the search warrant was held on June 26, 2008, at which the government presented the testimony of Officer Shell Sharp. The defendant did not present evidence. Based on the testimony and evidence adduced, and having had an opportunity to observe the demeanor and evaluate the credibility of the witness, the undersigned makes the following findings of fact and conclusions of law.

**Findings of Fact**

On April 24, 2008, Officer Shell Sharp of the Saint Louis Metropolitan Police Department applied for search warrants to search residences located at 4408 Alaska in the city of Saint Louis.[1] Officer Sharp attached an affidavit, signed by him, to support the issuance of the warrants. (Gov. Ex.

---

[1]  The structure located at 4408 Alaska is a two-story, two-family building with a residence on each floor.

M1)

In the affidavit, Officer Sharp stated that he received information regarding the defendant from a confidential source whose information proved reliable in the past. The affidavit further stated:

> Information received in the past from this source has resulted in four felony arrests and convictions in the Circuit Court and Federal Court System and one case pending. This source has also provided information, which has resulted in the seizure of various controlled substances along with illegal weapons. (Gov. Ex. M1)

Specifically, on April 18, 2008, the source informed Officer Sharp that he/she had entered the residences at 4408 Alaska, a two story building, where he/she personally observed cocaine, marijuana and several handguns in the defendant's possession. Additionally, the source stated that the defendant stored on the premises narcotics and money earned from the sale of narcotics. The source also described the defendant as a black male, 5'6" tall, approximately 310 lbs, medium complexion, a heavy build, and approximately 42 years old. Following this meeting, Officer Sharp performed a computer check on the defendant, which revealed that the defendant had been arrested for a variety of felony charges.

Pursuant to the information, Officer Sharp conducted surveillance of 4408 Alaska for two hours on April 21, 2008, as well as for one hour on April 22, and for another hour on April 23, 2008. During this surveillance, Officer Sharp observed numerous individuals knock on the door of the first floor residence. A person matching the defendant's description answered the door each time and spoke briefly with the individual who knocked before engaging in what appeared to be a hand to hand transaction. The individual would then depart on foot or by vehicle. The person matching the defendant's description then briefly entered the second floor residence and returned to the first floor.

Subsequently, on April 24, 2008, the source again contacted Officer Sharp and informed

Officer Sharp that he/she had been inside 4408 Alaska less than eight hours earlier. At that time, the source again had observed the defendant in possession of cocaine and marijuana.

Based on his surveillance and the information received from the confidential source, Officer Sharp stated in the affidavit that he believed the defendant was storing and selling a large amount of cocaine and marijuana at the residences at 4408 Alaska.

Based on the information presented in Officer Sharp's affidavit, a Saint Louis City Circuit judge issued search warrants on April 24, 2008.[2] The warrants directed officers, within ten days, to search 4408 Alaska's first and second floors. The warrants specifically stated:

> 4408 Alaska first [and second] floor is described as a two story, two family residence, made of brick construction. The front door faces west onto Alaska and is clearly marked on the outside of the residence. The front door of the residence is constructed of wood and has a (sic) exterior storm door. (Gov. Ex. M1)

The warrants further directed that officers were to seize any of the following:

> Cocaine and Marijuana, drug transaction records, drug paraphernalia, scales, packaging material, and other dilutants used in distribution. Unlicensed firearms used for protecting the above mentioned items. U.S. currency obtained from the illegal sales of narcotics. (Gov. Ex. M1)

Officers from the Saint Louis Metropolitan Police Department executed the search warrants on April 25, 2008. Pursuant to this search, officers seized a .22 caliber handgun from the first floor of the building, as well a mechanical scale and measuring glass (items commonly used in the distribution of narcotics) from the second floor. The search revealed no other contraband material on the premises at the time of the search. The defendant was not present at the time of the search. The defendant was indicted and charged with being a felon in the possession of a firearm under 18

---

[2] The issuing judge inadvertently dated the search warrants April 23 instead of April 24, 2008.

U.S.C. §922(g)(1).

## Conclusions of Law

**A.      Probable Cause Existed For The Issuance Of The Warrant.**

The Fourth Amendment requires probable cause to support the issuance of a search warrant. Probable cause, in turn, requires sufficient facts that would justify a prudent person's belief that contraband or some other evidence exists in the place to be searched. Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986). Therefore, the issuing judge must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238; United States v. Stevens, 439 F.3d 983, 987-88 (8th Cir. 2006); United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005); United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995). Further, a reviewing court must give deference to the issuing judge's determination of probable cause. Stevens, 439 F.3d at 988; Solomon, 432 F.3d at 827; Gladney, 48 F.3d at 312 (citations omitted); United States v. Leichtling, 684 F.2d 553, 555 (8th Cir. 1982) (citations omitted).

Where a warrant is based solely on an affidavit, a reviewing court must consider only the affidavit itself when determining whether the totality of the circumstances established probable cause. Stevens, 439 F.3d at 988; Solomon, 432 F.3d at 827; Gladney, 48 F.3d at 312; Leichtling, 684 F.2d at 555 (citations omitted). "When the affidavit is based on information from an informant, the informant's reliability, veracity, and basis of knowledge are relevant to whether the affidavit provided probable cause to support the search." Solomon, 432 F.3d at 827. Thus, the defendant's motion

must fail if the affidavit contained reliable information establishing a fair probability that contraband or other evidence would be found at 4408 Alaska.

Information from a confidential source can be sufficient to establish probable cause where that source "has a track record of supplying reliable information" or if that information "is corroborated by independent evidence." United States v. Gabrio, 295 F.3d 880, 883 (8th Cir. 2002); United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993); see also, Solomon, 432 F.3d at 827 ("even the corroboration of minor, innocent details can suffice to establish probable cause" (citations omitted)). Where the source has provided information in the past that led to arrests or the seizure of contraband, there may be a sufficient track record for probable cause. Gabrio, 295 F.3d at 883. Also, where a defendant has a prior felony record, this bolsters the credibility and reliability of the source's information. Gabrio, 295 F.3d at 883.

Here, the affidavit establishes that Officer Sharp's confidential source was reliable. The affidavit stated that the confidential source had provided reliable information in the past. The affidavit further stated that this information led to four felony arrests and convictions, with one case pending, as well as seizures of contraband and illegal firearms. Therefore, the affidavit demonstrated that Officer Sharp had learned from a reliable source that there were drugs, firearms and currency present in the residences at 4408 Alaska.

Likewise, Officer Sharp's independent corroboration of information from the source further bolstered the source's reliability. After receiving information from the source, Officer Sharp discovered that the defendant had a felony record. Officer Sharp then personally observed the property at 4408 Alaska, personally observed at 4408 Alaska a person fitting the source's description of the defendant, and personally observed the defendant engaging in activity consistent with illegal

drug transactions.

Because the information in Officer Sharp's affidavit was based on both information from a reliable source as well as independent corroboration, the totality of the circumstances reflected a fair probability that contraband or other evidence of a crime would be found at 4408 Alaska. There was probable cause to issue the warrant based on the information in the affidavit.

The defendant next argues that probable cause was absent because the warrant listed items not seized or found during the execution of the warrant; this argument fails as well. As discussed supra, where a judge issues a warrant based solely on an affidavit, a reviewing court is required to determine the existence of probable cause based on the affidavit alone. Stevens, 439 F.3d at 988; Solomon, 432 F.3d at 829; Gladney, 48 F.3d at 312; Leichtling, 684 F.2d at 555 (citations omitted). The issuing judge had no occasion and no duty to determine what actually was in the house; instead, the judge was bound to determine whether under the totality of the circumstances there was a "fair probability" that certain items would be found. Stevens, 439 F.3d at 987-88; Solomon, 432 F.3d at 827; Gladney, 48 F.3d at 312. Here, the affidavit established that the source had personally observed illegal drugs and firearms, that the source was reliable, and that Officer Sharp had corroborated the source's information. Therefore, probable cause existed to support the issuance of the warrant.

The defendant also argues that the search warrant's description of items to be seized was vague and overbroad. "To satisfy the particularity requirement of the fourth amendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be searched." United States v. Horn, 187 F.3d 781, 788 (8th Cir. 1999) (citation omitted) (words "records, documents, receipts, keys, or other objects showing access to and control of residence" were sufficiently particular); see also, United States v. Nieman, -- F.3d ---, 2008 WL 860781, *3 (8th

Cir. April 2, 2008) (warrant and affidavit sufficiently described types of papers, notes, records, documents and photographs to be seized).

Here, the warrant described the items to be seized as:

> Cocaine and Marijuana, drug transaction records, drug paraphernalia, scales, packaging material, and other dilutants used in distribution. Unlicensed firearms used for protecting the above mentioned items. U.S. currency obtained from the illegal sales of narcotics. (Gov. Ex. M1)

This description sufficiently identifies the items such that searching officers could identify the items to be seized. In the resulting search, the officers seized scales, drug paraphernalia (the measuring glass), and a firearm. Had officers also located the other items listed, the warrant sufficiently described those items as well.

The warrant was not vague or overbroad.

### B. The Seizing Officers Properly Executed The Search Warrant.

The defendant argues that the Court should suppress evidence seized at 4408 Alaska because officers executing the search warrant did not comply with Rule 41 of the Federal Rules of Criminal Procedure, and this was a violation of his Fourth Amendment rights.[3] This argument fails.

Rule 41 requires, *inter alia*, officers executing a search warrant to provide a copy of the

---

[3] The Court agrees with the government that the "exigent circumstances" argument is inapposite. [Doc. 25, n. 4.] "Exigent circumstances" apply where officers conduct a search without a warrant or perform a no-knock entry on a warrant. Neither circumstance was present here. Upon arrival, Officer Sharp contacted Farrah Scott, the defendant's girlfriend who resided on the first floor. He advised her why the officers were there, and Ms. Scott indicated no one was present inside the first floor apartment at that time. Officers noted the defendant's and Ms. Scott's names on the front door of the first floor apartment. (Gov. Ex. M2) The officers knocked, announced their presence, received no response, and entered by turning the door knob. Entry was made on the second floor by battering ram after the officers knocked, announced their presence, and received no response. Officers entered both the first and second floor apartments pursuant to lawfully issued search warrants and, thus, the "exigent circumstances" argument does not apply.

warrant, as well as a receipt for any property taken, to the person whose property was searched or seized. Fed. R. Crim. P. 41(f)(3).[4] This rule, however, applies only to federal searches. United States v. Spencer, 439 F.3d 905, 913 (8th Cir. 2006) (citations omitted). Where a state court issued the warrant, and federal law enforcement officers did not participate in the execution of the warrant, Rule 41 does not apply. Id., at 913. Further, even if federal officers are present at the execution of a warrant, Rule 41 will apply only there is significant federal involvement in the search and seizure. United States v. Schroeder, 129 F.3d 439, 443 (8th Cir. 1997).

Here, a state court judge issued the warrant. State law enforcement officers executed the warrant. There was only one federal agent, from the Bureau of Alcohol, Tobacco, Firearms, and Explosives, present at the execution of the search warrant. This agent's participation was at most negligible. As a result, Rule 41 does not apply. Spencer, 439 F.3d at 913; Schroeder, 129 F.3d at 443.

Even if Rule 41 did apply, a violation of Rule 41 is grounds for suppression of evidence where the defendant demonstrates that the violation was deliberate or prejudicial. Spencer, 439 F.3d at 913. The same "deliberate or prejudicial" standard applies to failures to follow a state law similar to Rule 41. Schroeder, 129 F.3d at 443-44; see also, United States v. Zacher, 465 F.3d 336, 339 (8th Cir. 2006). Mere failure to provide a copy of a warrant or receipt for seized items is not, by itself, sufficient to find a violation of Rule 41 or its state law counterpart. Schroeder, 129 F.3d at 443. Innocent violations of these rules do not require suppression and may be excused. Zacher, 465 F.3d at 339; Schroeder, 129 F.3d at 443-44.

---

[4] Rule 41(f)(1)(C) states: "[t]he officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property."

The executing officers here did leave a copy of each warrant at each residence and thereby complied with Rule 41 and Missouri Revised Statute § 542.291(4) as to the warrants. First, the officers provided the warrant for the first floor to Farrah Scott, whose name appeared on the door to the first floor residence. Ms. Scott read and retained this copy and placed it inside the residence. Ms. Scott was present for the search and witnessed the seizure of items from the first floor. Similarly, the officers provided a copy of the second-floor warrant to Catherine Thomas, who indicated that she was the resident of the second floor and that the defendant lived on the first floor.[5] Officers explained to Ms. Thomas that a search warrant had been executed. Officers then showed items seized from the second floor to Ms. Thomas. Thus, there was no violation of either Rule 41 or the Missouri law with respect to the warrants.

While the executing officers did not provide Ms. Scott or Ms. Thomas with a receipt for items seized, the defendant has presented no evidence that either omission was deliberate or prejudicial[6].

---

[5] In its response brief [Doc. 25, n. 3], the government challenged the defendant's "standing" to object to the execution of the warrant for the second floor. (See United States v. Green, 275 F.3d 694, 698 n.3 (2001), which explains the misnomer "standing" in Fourth Amendment challenges.) The government argued that the defendant had not presented any evidence that he was a resident or owner of the second floor residence. It is true that the defendant has the burden of showing that he had a reasonable expectation of privacy in the area searched. Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978). The defendant has not presented any evidence to show that he had an expectation of privacy, or that such an expectation was objectively reasonable. Even if the defendant had presented such evidence, however, he has presented no evidence that the officers deliberately or prejudicially violated his rights during the execution. As such, even if the defendant could show a legitimate expectation of privacy, this has no bearing on the fact that any defects in the execution were innocent.

[6] At the evidentiary hearing, the defendant took issue with the fact that copies of the returns provided to him did not identify the floor to which the return applied. The government stated that the original receipts contained handwritten notations identifying "First Floor" and "Second Floor", but that the timestamp from a facsimile machine had covered up those notations on the copies provided to the defendant. The government has provided the Court and the defendant with unaltered copies, which bear the notations. Accordingly, the Court considers the matter closed.

As such, the defendant has not demonstrated any deliberate or prejudicial violation of Rule 41 or its Missouri counterpart.

## II. MOTION FOR PRODUCTION AND INSPECTION OF GRAND JURY TRANSCRIPTS OR REPORTS.

Under Rule 6 (e)(3)(E) of the Federal Rules of Criminal Procedure, a court may authorize disclosure of grand jury materials where, *inter alia*, a defendant demonstrates a "particularized need" for the materials. Fed. R. Crim. P. 6(e)(3)(E); Dennis v. United States, 384 U.S. 855, 870-875 (1966); Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400-401 (1959); United States v. Broyles, 37 F.3d 1314, 1318 (8th Cir. 1994). The Eighth Circuit has expressed the balance between the policy of secrecy which is to be afforded grand jury proceedings and the limited exceptions in which disclosure may be made by means of the "particularized need" requirement. E.g., Thomas v. United States, 597 F.2d 656, 657 (8th Cir. 1979). If a witness testifies at trial, his or her testimony before the grand jury, if any, constitutes a statement required to be produced. Fed. R. Crim. P. 26.2 (f)(3). However, the production of such statements cannot be compelled prior to trial. Hanger v. United States, 398 F.2d 91, 96-97 (8th Cir. 1968), cert. denied, 393 U.S. 1119 (1969); see also, Dennis, 384 U.S. 855.

The defendant sets forth two bases for the request for grand jury materials. First, the defendant asserts that "the evidence considered by the grand jury improperly considered (sic) of evidence illegally obtained by the government and that evidence should not have been considered by the grand jury." [Doc. 18, at 1.] The defendant then contends that the grand jury materials will demonstrate inconsistent testimony by one of the witnesses. [Doc. 18, at 2.]

The defendant has provided insufficient support for his statements. There is no evidence or explanation of what evidence the government illegally obtained that was considered by the grand jury.

It is not the duty of the Court to guess what evidence before the grand jury was objectionable to the defendant. Likewise, there is no mention of which witness provided inconsistent testimony or how this witness's testimony was at all inconsistent. Such unsupported allegations do not demonstrate a "particularized need" for the materials. See Broyles, 37 F.3d at 1318 (bare allegations of need not sufficient).

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant Frednandus McIntosh's Motions to Suppress Evidence be **DENIED**. [Doc. 14, 17 & 24]

**IT IS FURTHER RECOMMENDED** that defendant Frednandus McIntosh's Motion for Production and Inspection of Grand Jury Transcripts or Reports be **DENIED**. [Doc. 18]

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/ Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of July, 2008.